UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

JORDEN TIMOTHY HOLLINGSWORTH,   Case No. 3:20-cv-01567-MC

    Petitioner,   OPINION AND ORDER

  v.

TIM CAUSEY,

    Respondent.
_____

MCSHANE, District Judge.

    Petitioner brings this Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 challenging his convictions for sexual abuse on grounds that his trial counsel provided constitutionally ineffective assistance. The state court rejected petitioner's claims in a decision that is entitled to deference, and the Petition is DENIED.

## BACKGROUND

    In October of 2015, petitioner was charged with two counts of Sexual Abuse in the First Degree. Resp't Ex. 102. The charges arose from the abuse of JS, a pre-teen girl, on two separate occasions.

- 1 -   OPINION AND ORDER

On the day of trial, petitioner elected to waive his right to a jury trial. Resp't Ex. 124. He and the trial court engaged in the following colloquy:

> The Court: Sir, I'd like to begin, Mr. Hollingsworth, with a document in front of me. It's entitled Waiver of Jury Trial. Towards the bottom and the middle is a signature. Is that your signature?
>
> Defendant: Yes, it is.
>
> The Court: Sir, before you signed that document, did you read it carefully or have it read to you?
>
> Defendant: Yes.
>
> The Court: Did you understand it?
>
> Defendant: Correct.
>
> The Court: Sir, you understand that under the law you have the right to a 12-person jury. We actually have jurors waiting right now across the courtyard to come over and be jurors on at least one other case. Your attorney and the State would ask those individuals questions. Decisions would be made, tactical decisions by you and your attorney about which of those potential jurors you would remove from the panel. And the State would have the opportunity to do that as well. We call that peremptory challenges. Of course, anyone would be removed from the panel that simply couldn't hear this kind of a case for personal reasons of bias, of course. And then the end result would be a 12-person jury. Those members of our community would – would listen to the facts presented by the State, any defense presented by your – you and your attorney, and those 12 people would make a decision about whether the State can prove you guilty beyond a reasonable doubt. Do you understand that process, sir?
>
> Defendant: Yes, I do.
>
> The Court: And you understand, sir, that by providing me with this document and by having this conversation with me, what you're doing is you're saying, "Judge, I don't want a 12-person jury. I want to leave the decision entirely in your hands, Judge Weber, as to whether or not the State can prove the case beyond a reasonable doubt."
>
> Defendant: That is correct.

- 2 -    OPINION AND ORDER

>  The Court:     Do you have any questions at all about your right to a jury trial?
>
>  Defendant:    No.
>
>  The Court:     Okay. I'm going to go ahead and accept your waiver at this time. I'm going to make a finding that it's knowingly, voluntarily, and intelligently made.

Resp't Ex. 103 at 8-10.

At trial, JS testified that in February 2015, petitioner reached under her shirt and fondled her breast as she slept on a couch in her father's home. Resp't Ex. 103 at 30-33. JS testified that when she awoke and confronted petitioner about touching her breast, he pretended that he had been asleep and repeatedly asked JS if he could touch her. Resp't Ex. 103 at 34. When she refused, petitioner asked JS not to disclose what he had done and offered to give her money and take her to a movie. Resp't Ex. 103 at 35. JS also testified that a few years earlier, petitioner exposed himself to her and put his hand down her pants. Resp't Ex. 103 at 39-41. JS disclosed these incidents to her father and to child welfare worker at the Children's Center during a subsequent recorded forensic interview. Resp't Ex. 103 at 42, 44, 87-88, 163-258; *see also* Resp't Exs. 122, 128.

Petitioner testified in his defense and denied any inappropriate or sexual contact with JS. In particular, petitioner testified that during the alleged incident in February 2015, he noticed JS's shirt was "tucked up in her arm" as she slept and he was simply trying to pull it down when she awakened. Resp't Ex. 103 at 511, 517-21, 526. Petitioner's defense also relied on the expert testimony of Dr. Wendy Bourg, who testified regarding the one-week period of time between JS's initial disclosure and her forensic interview, the nature of questioning during JS's interview, and the possibility of JS being awakened while in a "dream" state. Resp't Ex. 103 at 471-488.

At the close of evidence, the court found petitioner guilty of both charges and sentenced him to concurrent terms of seventy-five months of imprisonment. Resp't Ex. 101 at 2-5.

After dismissing his direct appeal, petitioner sought post-conviction relief (PCR) in the Oregon courts and raised claims alleging the ineffective assistance of trial counsel. Resp't Ex. 105-06, 108. The PCR court denied relief, the Oregon Court of Appeals affirmed without opinion, and the Oregon Supreme Court denied review. Resp't Exs. 128, 131-33.

On September 8, 2020, petitioner sought federal habeas relief in this action.

## DISCUSSION

Petitioner asserts three grounds for relief based on the ineffective assistance of trial counsel. Petitioner contends that counsel coerced him into waiving his right to a jury, failed to call character witnesses in his defense, and failed to present expert testimony about potential side effects of medication prescribed to JS. The PCR court rejected these claims and respondent maintains that its ruling is entitled to deference.

A federal court may not grant habeas relief regarding any claim "adjudicated on the merits" in state court, unless the state court ruling "was contrary to, or involved an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d)(1). A state court decision is "contrary to" established federal law if it fails to apply the correct Supreme Court authority or reaches a different result in a case with facts "materially indistinguishable" from relevant Supreme Court precedent. *Brown v. Payton*, 544 U.S. 133, 141 (2005); *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).

A state court decision is an "unreasonable application" of clearly established federal law if the state court identifies the correct legal principle but applies it in an "objectively unreasonable" manner. *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002) (per curiam); *see Penry*

*v. Johnson*, 532 U.S. 782, 793 (2001) ("even if the federal habeas court concludes that the state court decision applied clearly established federal law incorrectly, relief is appropriate only if that application is also objectively unreasonable"). To meet this highly deferential standard, a petitioner must demonstrate that "the state court's ruling on the claim was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

Under the well-established precedent of *Strickland v. Washington*, 466 U.S. 668 (1984), a habeas petitioner alleging the ineffective assistance of counsel must show that 1) "counsel's performance was deficient" and 2) counsel's "deficient performance prejudiced the defense." *Id.* at 687. To establish deficient performance, petitioner "must show that counsel's representations fell below an objective standard of reasonableness." *Id.* at 688. To demonstrate prejudice, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Unless petitioner "makes both showings, it cannot be said that the conviction...resulted from a breakdown in the adversary process that renders the result unreliable." *Id.* at 687.

A "doubly deferential" standard applies when "a federal court reviews a state court's *Strickland* determination," *Cheney v. Washington*, 614 F.3d 987, 995 (9th Cir. 2010), and the state court "must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Richter*, 562 U.S. at 101.

### A. Voluntariness of Jury Waiver

In Ground One, petitioner claims that counsel rendered ineffective assistance by failing to ensure his jury waiver was knowing and voluntary. Petitioner argues that he was "talked into" a court trial on the morning of trial and felt pressured to waive his right to jury because

"everybody was there and ready to go." Pet'r Brief at 2. The PCR court rejected this claim and made the following findings:

> The declaration of attorney Arthur B. Knauss establishes that he had more than one discussion with petitioner whether to have a bench trial or a jury trial. They discussed that a judge might be more receptive than a jury to a defense theory that depended on expert testimony…and the contention that the victim had problems sometimes being truthful. Trial counsel did not demand that Petitioner waive jury trial nor was Petitioner told that the jury was needed for another case. There was a jury available for Petitioner's trial. Petitioner made a voluntary and informed decision to waive his right to a jury trial. The Honorable Katherine Weber engaged in a colloquy with petitioner before the trial about what would be involved if he chose to have a jury trial. Judge Weber also discussed whether petitioner instead wanted to have her decide whether he was guilty or not guilty. Petitioner told Judge Weber that he wanted to have her make the decision in his case. At the end of this colloquy, the court concluded that petitioner was making a knowing, voluntary, and intelligent decision to waive jury. Notably, petitioner never told Judge Weber that counsel had pressured him into waiving a jury. Nor did he disclose that counsel had supposedly threatened him into waiving his right to a jury trial or told him that a jury was not available. Indeed, Judge Weber said a jury was ready and waiting across the hall.

Resp. Ex. 128 at 2. The PCR court's findings are well supported by the record.

As noted by the PCR court, the trial court engaged in a colloquy with petitioner to ensure his waiver was knowing and voluntary, and at no time did petitioner assert that counsel had coerced or threatened him into waiving his right to a jury trial or told him that a jury was unavailable. Resp't Ex. 103 at 8-10. Instead, petitioner confirmed that he understood his rights and that he wished to proceed with trial before the court.

The PCR court also accepted counsel's declaration that he "thoroughly explained the pros and cons of a court trial verses a jury trial." Resp't Ex. 123 at 3. Specifically, counsel and petitioner discussed whether a judge would be more receptive to the defense theory that JS "just dreamed versus what actually happened, as she awakened with client allegedly touching her sexually" and Dr. Bourg's testimony about "this sort of 'twilight' state and the possibility of [JS] confusing a dream with reality." Resp't Ex. 123 at 3. Counsel believed that petitioner "was

leaning towards a court trial" and advised petitioner that it was his decision whether to proceed before a judge or a jury. Resp't Ex. 123 at 4.

Counsel's declaration, along with petitioner's signed waiver and his colloquy with the trial court, supports the PCR court's finding that petitioner knowingly and voluntarily waived his right to a jury. Accordingly, habeas relief is denied on Ground One.

### B. Failure to Call Character Witnesses

In Ground Two, petitioner claims that counsel failed to call four character witnesses to testify on his behalf during trial. Petitioner contends that these witnesses would have testified about his law-abiding nature and his appropriate behavior and interactions with children.

The PCR court denied this claim, finding that counsel "made a considered and informed strategic decision" not to call character witnesses because their testimony could open the door to questions about petitioner's criminal history. Resp. Ex. 128 at 2. The PCR court also found no prejudice, because petitioner failed to offer sworn statements by the proposed witnesses indicating the nature of their proffered testimony. Resp. Ex. 128 at 3. The PCR court's decision is reasonable and entitled to deference.

In his PCR declaration, counsel explained that "character witnesses are not typically effective" and can open the door to cross-examination regarding the defendant's criminal history. Resp't Ex. 123 at 5-6. Counsel noted that petitioner had prior convictions for Harassment and Assault and concluded that calling the four character witnesses would allow the prosecutor to ask about petitioner's criminal history. Counsel also explained that petitioner's family members had testified about issues he would have raised with the character witnesses, including petitioner's "appropriate and loving relationship with the victim and the fact that the child had never shown any hesitancy in being around Mr. Hollingsworth." Resp't Ex. 123 at 6.

Under *Strickland*, "[j]udicial scrutiny of counsel's performance must be highly deferential" and avoid the "the distorting effects of hindsight." *Strickland*, 466 U.S. at 689. Accordingly, a reviewing "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that...the challenged action 'might be considered sound trial strategy.'" *Id.* (citation omitted).

Given the deference owed to counsel's strategic decisions and the evidence of record, petitioner fails to show that the PCR court unreasonably found no deficiency arising from counsel's decision. Habeas relief is denied on Ground Two.

C. <u>Failure to Present Expert Testimony</u>

Finally, in Ground Three, petitioner claims that trial counsel was ineffective by failing to investigate or present expert testimony regarding the potential side effects of Dexedrine, a medication prescribed to JS in February of 2015. Petitioner argues that "FDA documents" for the medication reflect potential side effects of Dexedrine, including "psychotic symptoms[,] such as hearing voices, believing things that are not true, and [being] suspicious." Pet'r Brief at 4. The PCR court reasonably rejected this claim.

First, petitioner cites no evidence of record suggesting that JS ever experienced auditory hallucinations or exhibited paranoid or suspicious behavior after taking Dexedrine. Second, while Dr. Bourg prepared a report stating that "extreme sleepiness and impaired reality testing can occur during recovery from Dexedrine overdoses," Resp't Ex. 116 at 3, testimony at trial established that JS was taking a "low normal" dose of the medication. Resp't Ex. 103 at 55-56, 92, 105, 107, 305. Moreover, the PCR reasonably found that Dr. Bourg, a clinical psychologist,

was not qualified to opine whether Dexedrine could have caused JS to fabricate the allegations. Resp't Ex. 128 at 3.

Finally, a physician from the Children's Center testified that she was unaware of Dexedrine causing delusions or hallucinations, and based on this testimony, the PCR court found "there is no credible evidence that delusions or false reports of sexual abuse are even a documented potential side effect of Dexedrine." Resp't Ex. 128 at 3; *see also* Resp't Ex. 103 at 296, 307-08. In light of this record, the PCR court found no deficiency arising from counsel's alleged failure to offer expert testimony that was "unsupported by the facts in the case." Resp't Ex. 128 at 3.

The PCR court afforded counsel the deference mandated by *Strickland*, and its ruling was not "so lacking in justification" so as to render it unreasonable. *Richter*, 562 U.S. at 103.

## CONCLUSION

The Petition for Writ of Habeas Corpus (ECF No. 1) is DENIED and this case is DISMISSED. A Certificate of Appealability is denied on the basis that petitioner has not made a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2).

IT IS SO ORDERED.

DATED this 2nd day of March, 2022.

               s/ Michael J. McShane
               MICHAEL J. MCSHANE
               United States District Judge